IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ARTURO C. CASTRO<br><br>Plaintiff<br><br>vs<br><br>ROBERTO HARRY CASTRO HARRISON; UBS FINANCIAL SERVICES OF PUERTO RICO; LUIS BLANCO MATOS, ESQ.; VICTORIA LYNN CASTRO HARRISON a/k/a VICTORIA L. BABB<br><br>Defendants | CIVIL 16-2731CCC |

**STATEMENT OF REASONS IN SUPPORT
OF ORDER GRANTING MOTION TO COMPEL
ARBITRATION AND STAY PROCEEDINGS (D.E. 42)**

Plaintiff Arturo Celestino Castro ("Castro") filed a *pro se* complaint on September 27, 2016, claiming violations of the Securities and Exchange Act of 1934 and the Uniform Commercial Code. §§ 3 and 4. Plaintiff is questioning the validity of the liquidation of a UBS account belonging to the Estate of his mother, Dorothy H. Castro ("Mrs. Castro"), as the result of judicial proceedings that took place in the Commonwealth Court. Mrs. Castro passed away on December 7, 2014. (d.e. 20-2).

Before the Court is defendant UBS' Motion to Compel Arbitration and Stay Proceedings (**d.e. 20**) filed on January 30, 2017, plaintiff's opposition (d.e. 27) filed on February 22, 2017, and UBS' reply (d.e. 30) filed on March 17, 2017. UBS argues that plaintiff is bound by the arbitration clause in the UBS Client Relationship Agreement ("Agreement") executed by Mrs. Castro on October 12, 2012 (d.e. 25-1, p. 19). Plaintiff contends that

because his complaint includes claims under Puerto Rico estate laws that involve the administration of his mother's Estate, compelling arbitration is improper (d.e. 27, ¶¶ 3-4, 7, 11, 21).

Having granted defendant UBS' Motion to Compel Arbitration and Stay proceedings on September 29, 2018 (d.e. 42), the Court now sets forth the following:

## STATEMENT OF REASONS

The Federal Arbitration Act ("FAA") provides that "[a] written provision in [] a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Thus, "[w]here a contract contains an arbitration clause, 'there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Crespo v. Matco Tools Corp.*, 274 F. Supp. 3d 15 (D.P.R. 2017) (citing *Eazy Electronics & Tech., LLC v. LG Electronics, Inc.*, 226 F. Supp. 3d 68, 73 (D.P.R. 2016)).

In order to compel arbitration, UBS must show "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that

the other party is bound by that clause, and that the claim asserted comes within the clause's scope." *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 375 (1st Cir. 2011) (citing *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003)).

**1.     Validity of Agreement's Arbitration Provisions**

"The existence of a valid arbitration agreement is based on the consent of the parties to arbitrate at least some of their claims and to forgo a judicial remedy for those claims." *Johnson & Johnson Int'l v. Puerto Rico Hosp. Supply, Inc.*, 258 F. Supp. 3d 255, 260 (D.P.R.), reconsideration denied, 322 F.R.D. 439 (D.P.R. 2017) (referring to *McCarthy v. Azure*, 22 F.3d 351, 354-55 (1st Cir. 1994)). The Agreement's relevant arbitration provisions state, in part:

> **This Agreement contains a pre-dispute arbitration clause**. By signing an arbitration agreement the parties agree as follows:
>
> •   All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
>
> This arbitration Agreement represents the standard industry practice and binds you and us to arbitrate any disagreements that may arise between us.
>
> By opening an account at UBS, and by UBS Financial Services Inc. or UBS Financial Services Incorporated of Puerto Rico by accepting your application and carrying your account, you, UBS Financial Services Inc. and UBS Financial Services Incorporated of Puerto Rico agree as follows:
>
> •   We agree to resolve any controversy, claim or issue in any controversy that may arise by arbitration, whether it happens before or after, or at the time of this Agreement was executed, including but not limited to controversies, claims or

> issues in any controversy concerning any account, transaction, dispute or the construction, performance or breach of this Agreement or any other Agreement.
>
> • Any arbitration under this Agreement shall be governed by the Federal Arbitration Act and shall be conducted before an arbitration panel convened by the Financial Industry Regulatory Authority (FINRA) . . .

(d.e. 25-1, pp. 16-17).

The terms of the provisions are clear that the parties gave up their right to resolve disputes resulting from UBS' performance of the Agreement in court and are subject instead to arbitration.  UBS provided an executed copy of the Agreement, signed by Mrs. Castro on October 24, 2012.  (d.e. 25-1, p. 21).  The signature page directs the accountholder to the arbitration provision, reminding the signatory that:  "[t]he Client Relationship Agreement contains a pre-dispute arbitration clause located in the final section under the title 'Arbitration.'"  Id.

Castro concedes that the Agreement was signed by his mother (d.e. 27, ¶¶ 32, 38), but questions whether the signature page corresponds to the Agreement and whether the Agreement is the contract that controls his mother's account.  *Id*. at ¶¶ 32, 36, 37.  As to the first matter, Castro's imputations are baseless because the signature page thrice refers to the "Client Relationship Agreement" and its page number follows sequentially from those in the Agreement.  In terms of whether another document regulates his mother's account, the 'Introduction' section of the Agreement states:

> **Please note:**  this Client Relationship Agreement **applies to all of your accounts at UBS**, including any Accounts you may already have with us and Accounts you may open in the future.

(d.e. 25-1, p. 1).

Castro's allegations, unsupported, for example, by another UBS document that applies to IRA/401K accounts, fail to rebut the presumption that the signature page UBS provided is coupled to the Agreement and that the arbitration provisions are thus enforceable. Defendant has shown that a valid agreement to arbitrate exists.

## 2. UBS is Entitled to Invoke Arbitration Provisions

Castro brings claims of breaches of fiduciary duties and under the U.C.C. (d.e. 1, ¶¶ 61-65). These claims are "intertwined" with the Agreement. *See Johnson & Johnson Int'l*, 258 F. Supp. 3d at 261 (stating "claims are intertwined with the agreement when they directly or indirectly invoke the terms of that agreement or when the agreement must referenced when resolving the dispute"). As a non-signatory party who asserts claims related to the defendant's management and distribution of his mother's account, Castro embraces the Agreement and is equitably estopped from avoiding its arbitration provisions. *See Sourcing Unlimited, Inc. v. Asimco Int'l, Inc.*, 526 F.3d 38, 47-48 (1st Cir. 2008). UBS is entitled to invoke the arbitration provisions of the Agreement against Castro.

## 3. Plaintiff is beneficiary and thus bound by Clause

The Agreement provides that if an accountholder does not designate a beneficiary, then at the time of death, the beneficiary of the assets will be the surviving spouse of the accountholder or the estate if no surviving spouse exists:

>	According to the UBS IRA Custodial Agreements, UBS Financial Services Inc. is named as the custodian of your IRA when we accept the Account. At your death, the beneficiary or beneficiaries whose name(s) are shown on the Account Information pages of the Completing Your New Account Process package will become entitled to your IRA.
>
>	Beneficiaries must be named in writing. Your written designation may apply to future accounts, and in that case, we will confirm your designation in the Completing Your Account Opening Process package. If you do not designate beneficiaries, or your beneficiary designation does not effectively dispose of the assets, your beneficiary with respect to the IRA or any part of the IRA not effectively disposed of, will be your surviving spouse, or your estate if you do not have a surviving spouse.

(d.e. 25-1, p. 3).

His mother having failed to designate a beneficiary and as a member of his mother's Estate, Castro is a third-party beneficiary to the Agreement. "[A] third-party beneficiary of a contract containing an arbitration clause can be subject to that clause and compelled to arbitrate on the demand of a signatory." *InterGen N.V.*, 344 F.3d at 146. Castro is bound by terms of the Agreement, including its arbitration provisions.

### 4.	Scope of Agreement

"To determine the scope of the arbitration clause, the Court first considers the factual allegations underlying Plaintiffs' claims in the Complaint." *Crespo v. Matco Tools Corp.*, 274 F. Supp. 3d 15 (D.P.R. 2017) (referring to *Dialysis Access Ctr., LLC*, 638 F.3d at 378; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 622 n. 9, 105 S.Ct. 3346, 87 L.Ed. 2d 444 (1985)). In the complaint, Castro avers having informed UBS to "freeze" his mother's account (d.e. 1, ¶ 70) and to "stop payment" of all transactions in

CIVIL 16-2731CCC                     7

the UBS account (*Id.* at ¶ 72).  The factual allegations against UBS all involve the defendant's management of his mother's account.  They fall within the scope of the Agreement's arbitration provisions, as these subject to arbitration "any controversy, claim or issue . . . that may arise . . . concerning any account, transaction, dispute or the construction, performance or breach of this Agreement . . ." (d.e. 25, p. 17).

## CONCLUSION

For the reasons stated herein, the Court concludes that Castro's claims against defendant UBS are arbitrable under the Agreement's arbitrations provisions.  UBS' Motion to Compel Arbitration and Stay Proceedings (d.e. 20) is GRANTED.

SO ORDERED.

At San Juan, Puerto Rico, on May 9, 2018.

S/CARMEN CONSUELO CEREZO
United States District Judge